# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| STONEEAGLE SERVICES, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:15-mc-0904-NKL |
| | ) | |
| UMB BANK, N.A., | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Petitioner StoneEagle Services Inc. moves to compel Respondent UMB Bank, N.A. to comply with StoneEagle's subpoena duces tecum. [Doc. 4.]  For the reasons explained below, StoneEagle's motion to compel UMB Bank's compliance with the subpoena, as narrowed by StoneEagle, is granted.  In addition, StoneEagle shall bear all reasonable and necessary costs UMB Bank incurs in complying with the subpoena as narrowed.

## I.      Background

StoneEagle's motion to compel is related to a pending patent-infringement case StoneEagle filed in the Middle District of Florida, *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc. and Premier Healthcare Exchange, Inc.,* no. 8:13-cv-2240 (M.D. Fla.).  UMB Bank is not a party to that case.  UMB Bank provides certain services related to the business of the Defendants in that case, and StoneEagle seeks documents from UMB Bank regarding those services.  StoneEagle states it cannot obtain the documents from the Defendants.  UMB Bank objects to StoneEagle's subpoena and has not produced any documents.

## A.  Overview of the Middle District of Florida case

StoneEagle claims[1] it has been creating, providing, and implementing technology for virtual payment systems for over ten years.  S toneEagle developed and, in 2006, began marketing and selling a system for sending virtual payment and an explanation of payment (EOP) through a secured delivery method, such as by fax, to health care providers.  In the health care field, third-party administrators and insurance companies (Payors) generally adjudicate medical claims and pay health care providers for the insured a portion of such claims.  Hisorically, Payors mailed print checks and explanation of benefit (EOB) the health care providers who received payment.  StoneEagle's patents involve methods and systems for facilitating payments of health care benefits on behalf of a Payor by securely transmitting the EOP and a virtual stored-value card pre-funded with an account balance equal to the authorized benefit amount.  StoneEagle claims its patented payment system greatly reduces the Payors' costs and greatly increases the speed of getting payment to the health care provider.

The Defendants in the Middle District of Florida are also engaged in virtual payment processing.  Both Defendants offer for sale, and Defendant Pay-Plus Solutions, Inc. sells, a virtual payment processing system called Pay-Plus® Select (formerly called "Pay-Plus® VCard").  StoneEagle claims the Defendants' Pay-Plus® Select system transmits a stored-value virtual card payment and an EOP to a health care provider by facsimile, in a manner that infringes StoneEagle's patents.

## B.  The subpoena *duces tecum*

After StoneEagle and the Defendants in the underlying case had engaged in extensive

---

[1]      The overview of StoneEagle's claims in the Middle District of Florida case is taken from StoneEagle's motion to compel. [ Doc. 4, pp. 5 -6.]  U MB Bank does not dispute StoneEagle's description.

2

Case 4:15-mc-09004-NKL   Document 13   Filed 05/22/15   Page 2 of 15

discovery, including document production and depositions, StoneEagle served the subpoena *duces tecum* on UMB on January 8, 2015, and an amended subpoena *duces tecum* on January 15, 2015, containing 24 requests for documents. StoneEagle seeks discovery from UMB regarding the allegedly infringing Pay-Plus® Select system. ████████████████████████ ████████████████████████████████, which acts as both issuing bank and manager of the Pay-Plus® Select system. ██████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████ the Defendants do not possess all the documents and information regarding the functions of the Pay-Plus® Select system performed by UMB. UMB served objections to the document subpoena on January 19, 2015.

On January 16, 2015, at the same time StoneEagle was seeking to subpoena documents from UMB Bank, StoneEagle served a subpoena pursuant Federal Rule of Civil Procedure 30(b)(6) on UMB Bank, for a deposition of UMB's corporate representative to be taken January 26, 2015. On January 22, 2015, UMB Bank, which is headquartered in Kansas City, Missouri, filed a miscellaneous action in this Court seeking to quash the deposition subpoena. *UMB Bank, N.A. v. StoneEagle Services, Inc.,* case no. 4:15-mc-09001-NKL. With the parties' consent, the action was transferred on February 6, 2015 to the Middle District of Florida where the underlying litigation is pending.[2] Fed. R. Civ. P. 45(f). Prior to the transfer,

---

[2] Both parties reference case no. 4:15-mc-09001-NKL for background in their briefing in the case presently before this Court. Neither party provides information about the status of their dispute about the deposition subpoena, neither argues that case no. 4:15-mc-09001-NKL affects the present case, and neither requests that the present case be transferred to the Middle District of Florida. This Court has authority to transfer a motion for compliance with a subpoena, to the court that issued the subpoena, when the parties consent or if this Court finds exceptional circumstances. Fed. R. Civ. P. 45(f). As noted, the parties have not requested transfer. Furthermore, the Court does not find that this case presents exceptional circumstances for transfer.

and as directed by this Court, the parties attempted to reach a mutual resolution of their dispute

about the deposition subpoena. At the same time, the parties also attempted to resolve their

dispute about the document subpoena. StoneEagle narrowed the document requests to three

categories:

> (1) Documents relating to or evidencing UMB's contractual relationships with other nonparties, Store Financial Services, LLC, Interfax, U.S., Inc., and/or Red-Card Systems, LLC, as they relate to the Pay-Plus® Select system;
>
> (2) Documents relating to or evidencing UMB's communications, other than those with PPS and PHX, regarding the Pay-Plus® Select system, specifically with Store Financial, Interfax, or Red-Card; and,
>
> (3) Documents relating to or evidencing payments made or received by UMB relating to the Pay-Plus® Select system, specifically those to/from Store Financial, Interfax, or Red-Card.

[Doc. 4, pp. 4 -5.] StoneEagle now states in its motion to compel that it no longer seeks to

compel documents related to Red-Card. [*Id.*, p. 4, n.4.]

### C. UMB Bank's role

StoneEagle's patent infringement case against Pay-Plus Solutions and Premier Healthcare

Exchange is based upon method claims. Discovery performed in the underlying case to which

StoneEagle points ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

4

████████████████████████████████████████████████ [Doc. 3-5.] ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

StoneEagle also points to █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ [Doc. 3-8, Composite Exhibit

H, p. 4████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████ [*Id.*, p. 5.] ████████████████

████████████████████████████████████████████████████████

██████████



[*Id.*, p. 5-6.]

UMB Bank states it is a financial services provider and that its "only role with respect to the alleged system" is that of "a BIN [Bank Identification Number] sponsor[.]" [Doc. 5, p. 5.] UMB explains that a BIN is the unique identifier of a bank on a payment card, and that credit

card companies generally engage in a sponsorship with a vendor bank for credit card distribution and oversight. [*Id.*, n.6.] Therefore, UMB continues, its

> responsibilities are fundamentally limited to that of a bank exercising the functions necessary for prudent administration of a credit card program in accordance with the rules of the credit card network, which is MasterCard in the case of UMB's BIN sponsorship of PPS. UMB holds funds necessary to settle with MasterCard for card transactions initiated by PPS on behalf of its clients. Part of UMB's role as BIN sponsor under the MasterCard network rules, as well as under applicable Bank regulatory third party risk guidelines, requires that UMB perform certain oversight and monitoring functions to ensure t hat certain safety and soundness, financial soundness, and other compliance requirements are met. That is the role of a bank when it acts as a BIN sponsor.

[Doc. 5, pp. 5-6.] UMB states it "is <u>not</u> a *technology* partner to its BIN sponsorship clients" [*id.*, p. 6, emphasis in original], and "has absolutely no involvement in, and is entirely removed from, the technological aspect of the system that is at issue in [StoneEagle's] patent infringement suit" [*id.,* p. 7].

## II.     Discussion

StoneEagle argues that the subpoena seeks documents reasonably calculated to lead to the discovery of admissible evidence, and the documents cannot be obtained from the Defendants in the underlying case. Because the underlying patent infringement case involves method claims, StoneEagle argues that "the performance of *every* step within the Infringing System, including those of a financial nature, is both critical and relevant." [Doc. 10, p. 3; emphasis in original.] UMB argues that the documents StoneEagle seeks are irrelevant; the requests are ambiguous, overly broad, and unduly burdensome; and documents responsive to the requests would include trade secret, confidential, and proprietary business information.

The scope of discovery under a subpoena "must be read in the light of [Fed. R.

Civ. P.] 26(b)." *Heat and Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1023 (Fed. Cir. 1986). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things[.]" Further, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). *See also Hofer v. Mack Trucks*, 981 F.2d 377, 380 (8th Cir. 1992) ("The standard of relevance in the context of discovery is broader than in the context of admissibility[.]"); *Cincinnati Ins. Co. v. Fine Home Managers,* 2010 WL 2990118, *1 (E.D. Mo. July 27, 2010) ("This phrase has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") Thus, "even if a broad request yields some evidence that would not be admissible, such a request would not be barred, so long as there as any possibility that the information sought may be relevant to the subject matter involved." *See Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2013 WL 3225802, at *2 (E.D. Mo. June 25, 2013) (*citing Rolscreen Co. v. Pella Products of St. Louis, Inc.,* 145 F.R.D. 92, 95 (S.D. Iowa 1992)).

But a court must "limit the frequency or extent of discovery" when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" and "the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(2)(C). Under Rule 45(d)(3)(A)(iv), a subpoena *must* be quashed or modified if it "subjects a person to undue burden." *See also Enviropak Corp. v. Zenfinity Capital, LLC*, 2014 WL 4715384, at *4 (E.D. Mo. Sept. 22, 2014) (collecting Eighth Circuit district court cases in which the subpoenaing party has been required to attempt to obtain information from a party

7

before seeking it from a non-party). "In determining whether a subpoena imposes an undue burden, the court should balance the relevance of the testimony sought and the requesting party's need for the testimony against the potential hardship to the party subject to the subpoena." *Tyler v. Rahe,* 2014 WL 1875257, * 1 ( W.D. Mo. May 9, 2014) (citing *Plant Genetics Sys., N.V. v. Northrup King Co.*, 6 F.Supp.2d 859, 861 ( E.D. Mo. 1998), and *Heat & Control*, 785 F.2d at 1024)).

A subpoena *may* be quashed or modified if it requires disclosure of a "trade secret or other confidential research, development, or commercial information[.]" Rule 45(d)(3)(B)(i). The existence of a confidentiality or protective order can be grounds for a court to decline a motion to quash or modify a subpoena, made on the basis that trade secrets or other information covered by Rule 45(d)(3)(B)(i) is sought. *See The Hunte Corp. v. Martinelli,* 2010 WL 4813849 (W.D. Mo. Nov. 19, 2010) (where non-party argued subpoena sought trade secrets and other proprietary information, court declined to quash because a confidentiality order existed in the underlying action); *Plant Genetic Systems, N.V. v. Northrup King Co.,* 6 F.Supp.2d 859, 8 62 (E.D. Mo. 1998) (non-party's claim that it should not be required to produce subpoenaed confidential research and development information was rejected because non-party was signatory to protective order in underlying action; per the protective order, documents designated as "restricted confidential" by non-party would be seen only be outside legal counsel, not counsel or employees of non-party's competitors).

"A district court is afforded wide discretion in its handling of discovery matters." *Cincinnati,* 2010 WL 2990118, *1 ( *quoting Cook v. Kartridge Pak Co.,* 840 F .2d 602, 602 (8th Cir. 1988)).

**A. Whether the requested documents are relevant**

As discussed above, the standard established for discovery under Rule 26(b)(1) is a broad one. S toneEagle submitted documents produced by the Defendants in discovery in the underlying case, the particulars of which suggest UMB Bank may have information relevant to StoneEagle's method claims. For example, StoneEagle submitted ██████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ StoneEagle also submitted a ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ [Doc. 3-8, Composite

Exhibit H, p. 4.] ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ StoneEagle demonstrates the discovery it seeks is reasonably calculated to lead to the discovery of admissible evidence.

UMB Bank admits it is the BIN sponsor, and as such, that it is required to perform certain oversight and monitoring functions to ensure appropriate safety and soundness, financial soundness, and other compliance requirements are met. It denies that being a BIN sponsor is relevant to the claims in the underlying case. U MB denies having any other role, and

emphasizes that it is not a technology partner with the Defendants.  Even if UMB Bank's role is limited to the financial one it admits, and UMB Bank is not a technology partner, that does not mean UMB Bank has no documents discoverable under the broad Rule 26(b)(1) standard with respect to StoneEagle's method claims.  A discovery request is relevant for purposes of the Rule so long as there is any possibility that the information sought may be relevant to the subject matter, even if the request yields some evidence that is inadmissible, *Centrix Fin. Liquidating Trust*, 2013 WL 3225802, at *2.  Financial information concerning operation of the Pay-Plus® Select is relevant here.

Therefore, the documents StoneEagle seeks to compel are not irrelevant for purposes of Rule 26(b)(1).

### B.  Whether the requests are ambiguous or overly broad

UMB Bank argues the requests are ambiguous and overly broad because StoneEagle requests "all documents" "relating to or evidencing" "communications" with StoreFinancial, and because UMB does not define "communications."  [Doc. 5, p. 9.]

A party who objects to discovery as vague or ambiguous has the burden to show the vagueness or ambiguity.  *McKellips v. Kumho Tire Co., Inc.*, 2015 WL 1706564, at *23 (D. Kan. April 15, 2015) (citing *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 310 (D. Kan. 1996).  "A party responding to discovery should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests."  *Id.* (*citing Pulsecard,* 168 F.R.D. at 310, and *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 697 (D. Kan. 2007)).  To clarify responses to discovery, "the responding party may include any necessary, reasonable definition of such terms or phrases."  *Id.* (*citing Pulsecard,* 168 F.R.D. at 310).  Thus, in *McKellips*, the court held that if the defendant "used reason and common sense,

along with its own knowledge of its tire manufacturing business, it should be able to determine which document reflect, evidence, or describe [its tire] manufacturing process, as sought" by the plaintiff. *Id.* Furthermore, the use of omnibus words such as "all documents," "regarding," "relating to," and "evidencing" is appropriate so long as "the particular requests are otherwise appropriately tailored to request specific categories of information." *Id.* at *25.

As noted above, StoneEagle no longer seeks to compel documents related to Red-Card. [Doc. 4, p. 4 n.4.] Further, StoneEagle's requests are tailored to request specific categories of information: contractual relationships with StoreFinancial and Interfax relating to the Pay-Plus® Select system; communications with StoreFinancial and Interfax relating to the Pay-Plus® Select system; and payments made to or received from StoreFinancial and Interfax relating to the Pay-Plus® Select system. StoneEagle states in its reply that "communications" means "the exchange of information by any means, written, oral, or otherwise, specifically including but not limited to, facsimiles, letters, emails, and phone calls." [Doc. 10, p. 6.] With respect to the category of documents concerning payments, StoneEagle also states it will

> limit its request to those *documents evidencing* payments made or received by UMB relating to the Pay-Plus® Select System, specifically those to or from Store Financial or Interfax. To be clear, StoneEagle does **not** seek documents relating to each and every transaction made as part of the Pay-Plus® Select System. Rather, it seeks documents showing the payments UMB made or received in exchange for services UMB, Store Financial, or Interfax performed in carrying out the Pay-Plus® Select System.

[*Id.*, pp. 5-6, emphasis in original.]

StoneEagle's modified requests are not ambiguous or overly broad. Using reason and common sense, along with its own knowledge of its business, UMB Bank should be able to determine which documents are responsive to the modified requests.

11

### C. Whether the requests are unduly burdensome

UMB Bank argues that being required to search for and produce the requested documents would be "incredibly burdensome" to it, "especially in light of its position as a non-party." [Doc. 5, p. 9.]

"Given that the Federal Rules of Civil Procedure allow for broad discovery, the burden is typically on the party resisting discovery to explain why discovery should be limited." *Cincinnati,* 2010 WL 2990118, at *1 (*citing Rubin v. Islamic Republic of Iran,* 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)). "That is, after the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Id.* (*citing Hofer,* 981 F.2d at 380)). "Bare assertions that the discovery requested is…unduly burdensome…are ordinarily insufficient to bar production." *Id.* (*citing St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). In granting a motion to compel, the court in *Cincinnati* noted the objecting party failed to provide an estimate of hours or monetary cost of compliance. *Id.* at *2. The court was "not persuaded" that the amount of time or money required to comply represented an undue burden. *Id. See also Plant Genetic Systems v. Northrup King Co.,* 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (in denying non-party's motion to quash subpoena, court noted the non-party's failure to specify time or resources necessary to comply or to explain how compliance would actually be burdensome).

UMB Bank does not provide an estimate of the time or money it would be required to expend to comply with each of StoneEagle's requests. Given UMB Bank's argument that it plays scant or no role in the alleged infringing system, UMB Bank's expenditure of time and

12

money could be relatively limited. StoneEagle has also narrowed its requests as discussed above. But UMB Bank is a non-party to the underlying case. The Court therefore finds it appropriate to shift to StoneEagle all reasonable and necessary costs UMB Bank incurs in complying with StoneEagle's subpoena. *See The Hunte Corp.,* 2010 WL4813849, at \*2 (shifting fees and costs of non-party's compliance with subpoena to the subpoenaing party, citing Rule 45).

In view of the foregoing, the Court is not persuaded UMB Bank would be unduly burdened by complying.

### D. Trade secrets, and confidential and propriety business information

Finally, UMB Bank argues it should not have to produce the subpoenaed documents because they contain trade secrets, and confidential and proprietary business information, and StoneEagle is a business competitor.

As discussed above, Rule 45(d)(3)(B)(i) permits, but does not require, a subpoena to be quashed or modified if it requires disclosure of a trade secret or other confidential business information. Thus, courts have declined to quash or modify a subpoena that seeks production of materials covered by Rule 45(d)(3)(B)(i), when a protective or confidentiality order is in place. *See The Hunte Corp.,* 2010 WL 4813849, at \*2 (where non-party argued subpoena sought trade secrets and other proprietary information, court declined to quash because a confidentiality order existed in the underlying action); *Plant Genetic Systems,* 6 F.Supp.2d at 862 (non-party's claim that it should not be required to produce subpoenaed confidential research and development information was rejected because non-party was signatory to protective order in underlying action; per the protective order, documents designated as "restricted confidential" by non-party would be seen only be outside legal counsel, not counsel or employees of non-party's

competitors).

Here, StoneEagle explains that a p rotective order is in place in the underlying case, prohibiting disclosure of documents to StoneEagle personnel when the documents are designated "Highly Confidential—Outside Counsel Only":

> H. **"HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY"** Information or Items: Information or tangible things that are extremely confidential and/or sensitive in nature and that the Producing Party reasonably believes will cause economic harm or significant competitive disadvantage to the Producing Party if disclosed. The Parties agree that the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" designation: (a) employee information; (b) new product development, research, new engineering documents, and new testing documents; (c) information obtained from a Non-Party pursuant to a current Nondisclosure Agreement ("NDA"); (d) information or data relating to future products not yet commercially released and/or strategic plans; and (e) licenses, settlement agreements, or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the Producing Party. Documents marked CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY shall be treated as if designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY. In determining whether information should be designated as HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY, the Parties agree to use such designation only in good faith. Any HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY Information or Items obtained by any Party from any person pursuant to discovery in this litigation may be used only for purposes of this litigation.

[Doc. 3-11, Protective Order, pp. 8-9, emphasis in original.] S toneEagle states it w ill not challenge UMB Bank's designation of the subpoenaed documents under the "Highly Confidential—Outside Counsel Only" category. [Doc. 11, p. 8. ] UMB Bank argues that the information is highly sensitive and that its economic interests are threatened by disclosure to any entity, regardless of a protective order. [Doc. 5, pp. 10-11.] As discussed above, UMB Bank also maintains that it plays scant or no role in the alleged infringing system, and is only the BIN

14

sponsor.  UMB Bank does not explain how disclosure to outside counsel, to be used for purposes of this litigation only, pursuant to protective order threatens is economic interests.

The Court in its discretion finds that the protective order will preserve UMB Bank's economic interests in any trade secrets, and confidential and proprietary business information it produces pursuant to the subpoena.

## III.      Conclusion

Petitioner StoneEagle Services Inc.'s motion to compel Respondent UMB Bank, N.A.'s compliance with StoneEagle's subpoena *duces tecum* [Doc. 4], as narrowed by StoneEagle and discussed above, is granted.  S toneEagle shall bear all reasonable and necessary costs UMB Bank incurs in complying with the subpoena as narrowed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:   May 22, 2015
Jefferson City, Missouri